## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ───────────────────────── )<br>AQEEL ABDULAZIZ AL-AQEEL, )<br> )<br>      **Plaintiff,** )<br> )<br>    **v.** )<br> )<br>HENRY M. PAULSON, JR.,[1] )<br>Secretary of the Treasury, )<br>et al., )<br> )<br>     **Defendants.** )<br>───────────────────────── ) | Civil Action No. 05-943 (GK) |

### MEMORANDUM OPINION

Plaintiff Aqeel Al-Aqeel,[2] a citizen and resident of Saudi
Arabia, brings this action challenging his designation as a
"Specially Designated Global Terrorist" ("SDGT") by the Department
of the Treasury's Office of Foreign Assets Control ("OFAC")
pursuant to the International Emergency Economic Powers Act
("IEEPA"), 50 U.S.C. §§ 1701 et seq. and Executive Order No.
13,224. The Amended Complaint names as Defendants Secretary of the
Treasury Henry M. Paulson, Jr., Secretary of State Condoleezza
Rice, Attorney General Michael B. Mukasey, and Assistant Secretary

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the Treasury
Henry M. Paulson, Jr., is automatically substituted as defendant
for former Secretary of the Treasury John Snow; Attorney General
Michael B. Mukasey is automatically substituted as defendant for
former Attorney General Alberto Gonzales.

[2] Plaintiff is referred to as Aqeel Abdulaziz Al-Aquil in the
Complaint, and as Aqeel Abdulaziz Al-Aqeel in the Amended
Complaint. For the sake of consistency, Plaintiff will be referred
to as Al-Aqeel throughout this Memorandum Opinion.

of the Treasury for Terrorist Financing Patrick O'Brien (hereinafter collectively "the Government"). This matter is before the Court on the Government's Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [**Dkt. No. 29**] and Plaintiff's Motion for Summary Judgment [**Dkt. No. 36**]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons set forth below, the Government's Motion to Dismiss is **granted** and Plaintiff's Motion for Summary Judgment is **denied as moot**.

## I.   BACKGROUND[3]

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., "authorizes the President to declare a national emergency when an extraordinary threat to the United States arises that originates in substantial part in a foreign state." Holy Land Found. v. Ashcroft, 333 F.3d 156, 159 (D.C. Cir. 2003). Once the President has made such a declaration, he may

> investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any

---

[3] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). Therefore, the facts set forth herein are taken from Plaintiff's Amended Complaint and Plaintiff's Motion for Summary Judgment.

foreign country or a national thereof has any interest by
any person, or with respect to any property, subject to
the jurisdiction of the United States.

50 U.S.C. § 1702(a)(1)(B).

Following the September 11, 2001 terrorist attacks, President
Bush issued Executive Order No. 13,224. The President determined
that the attacks constituted "an unusual and extraordinary threat
to the national security, foreign policy, and economy of the United
States." Exec. Order No. 13,224, 66 Fed. Reg. 49079 (Sept. 23,
2001). Therefore, pursuant to his authority under IEEPA, the
President blocked the assets of twenty-seven foreign terrorists and
terrorist organizations. Id., Annex.

The Order also authorized the Secretary of the Treasury, in
consultation with the Secretary of State and the Attorney General,
to designate persons who are owned or controlled by, or act on
behalf of, the foreign terrorists and terrorist organizations
specifically named in the Order. Id. § 1(c). Persons who "assist
in, sponsor, or provide financial, material, or technological
support for, or financial or other services to or in support of,
such acts of terrorism or those persons listed in the Annex" may
also be designated. Id. § 1(d)(i). Further, the President found
that

> For those persons listed in the Annex to this order or
> determined to be subject to this order who might have a
> constitutional presence in the United States, I find that
> because of the ability to transfer funds or assets
> instantaneously, prior notice to such persons of measures
> to be taken pursuant to this order would render these

measures ineffectual.

Id. § 10.

On June 2, 2004, pursuant to this authority, the Office of Foreign Assets Control designated Plaintiff a Specially Designated Global Terrorist.  OFAC did not provide Plaintiff with advance notice of his designation.  Instead, he was made aware of his designation by a Department of the Treasury press release posted on the Internet.  Am. Compl. ¶ 20; OFAC List of Specially Designated Nationals and Blocked Persons, available at http://www.treas.gov/offices/enforcement/ofac/sdn/.

Plaintiff is the former Chairman of Al-Haramain Islamic Foundation ("AHF") an Islamic charity based in Saudi Arabia.  At various times, OFAC has designated various national branches of the AHF, including the branch located in the United States, as SDGTs. The AHF branch in the United States, the Al Haramain International Foundation, Inc. ("AHIF") is an Oregon corporation.  According to documents filed with the Internal Revenue Service, Plaintiff was listed as the President of AHIF, which owned real property in Oregon and Missouri and maintained an Oregon bank account.  Indeed, Plaintiff assisted in the acquisition of the Missouri property. Furthermore, Plaintiff traveled to both Oregon and Missouri on behalf of AHIF.

According to an indictment handed down by a federal grand jury in Oregon in 2005, AHIF functioned as an instrumentality of the

global AHF organization.  Indictment, <u>United States v. Al-Haramain</u> <u>Islamic Found., Inc.</u>, No. CR 05-60008 (D. Or.).  "[AHIF] was funded by its parent organization [AHF] through its headquarters in Riyadh, Saudi Arabia, which exercised decision making authority over financial transactions conducted by the United States office." <u>Id.</u> at ¶ B. vii.

The Treasury Department press release announcing Plaintiff's designation as an SDGT provides further information regarding the relationship between him and AHF.  According to the press release, "Al-Aqil [sic] has been identified as AHF's Chairman, Director General and President in a variety of sources and reports."  Office of Public Affairs Press Release "Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaida Supporters," June 2, 2004, <u>available</u> <u>at</u> http://www.treas.gov/press/releases/ js1703.htm.  The Treasury Department further stated that "[a]s AHF's founder and leader, Al-Aqil [sic] controlled AHF and was responsible for all AHF activities, including its support for terrorism."  <u>Id.</u>

On May 11, 2005, Plaintiff filed his original Complaint, which alleged that OFAC's designation of Plaintiff as an SDGT violated his procedural and substantive due process rights under the Administrative Procedure Act, 5 U.S.C. § 551(a) <u>et</u> <u>seq.</u> ("APA"), and his Fourth Amendment rights.  The Government filed a Motion to

Dismiss and Plaintiff filed a Motion for Summary Judgment.[4]

Starting in August 2005, the parties entered into settlement negotiations in an attempt to resolve the case.  As part of those discussions, the Government provided Plaintiff with a copy of the unclassified and non-privileged portions of the Administrative Record developed by OFAC during the designation process.  (By providing these portions of the Administrative Record, the Government does not concede that Plaintiff was otherwise legally entitled to them).  The parties were ultimately unable to resolve the case.

Accordingly, the Court set a briefing schedule and Plaintiff filed a Motion for Leave to Amend the Complaint.  In his Motion, Plaintiff conceded that much of the original Complaint was now moot, "due to the government's willingness to provide a large portion of the administrative record." Id. at 3.  The only remaining issue between the parties, according to Plaintiff, was whether he was entitled to portions of the Administrative Record that were withheld by the Government because they contained privileged or law enforcement sensitive ("LES") material. Id. For that reason, Plaintiff sought leave to amend his Complaint to make this claim, which the Court granted.[5]  Nevertheless, Plaintiff has

---

[4] These motions were denied as moot after Plaintiff's Amended Complaint was filed.

[5]   Plaintiff did not challenge the substance of his
(continued...)

subsequently argued that "[t]he issue in this case is [the broader issue of] whether the government is required to provide notice and a meaningful hearing, even in written form, at anytime, even after the designation." Pl.'s Opp'n to Mot. to Dismiss at 1. The result is substantial confusion in the papers concerning what issue or issues are actually in dispute between the parties.[6] Out of an abundance of caution and in the interest of judicial economy, the Court will address both issues.

In his Amended Complaint, Plaintiff claims that the Government's failure to provide the privileged and LES portions of the Administrative Record violated (1) his procedural due process rights under the APA (Count I); (2) his substantive due process rights under the APA and the Fifth Amendment (Count II); and (3) his rights under the Fourth Amendment (Count III).

In response to the Amended Complaint, the Government filed a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiff moved for summary judgment pursuant to Fed. R. Civ. P. 56. These motions are presently before the

---

[5](...continued)
designation as an SDGT.

[6] As a further example, in Plaintiff's Reply to his Motion for Summary Judgment, he inconsistently states both that "the only matter for the court to address is whether the Plaintiff is entitled to the privileged document being withheld by the government," Reply to Mot. for Summ. J. at 1-2, and that "[t]he issue in this case is whether the government is required to provide notice and a meaningful hearing, even in written form, at anytime, even after the designation." Id. at 3.

Court.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

Under the standard set out in Twombly, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success...must assume all the allegations in the complaint are true (even if doubtful in fact)...[and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotations marks and citations omitted).

## III.  ANALYSIS

### A.    Al-Aqeel Has a Sufficient Nexus with the United States to Assert Rights Under the Constitution

As a threshold matter, the Government argues that Plaintiff, a citizen and resident of Saudi Arabia, has an insufficient connection with the United States to raise any claims under the Constitution.

A citizen of a foreign state "without property or presence in this country has no constitutional rights, under the due process clause or otherwise." People's Mojahedin Org. of Iran v. U.S. Dep't of State, 182 F.3d 17, 22 (D.C. Cir. 1999), cert. denied 529 U.S. 1104 (2000); see also 32 County Sovereignty Comm. v. Dep't of State, 292 F.3d 797, 799 (D.C. Cir. 2002).  Aliens who have "come within the territory of the United States and developed substantial connections with this country," by contrast, are entitled to constitutional protections. Nat'l Council of Resistance of Iran v. Dep't of State, 251 F.3d 192, 201 (D.C. Cir. 2001) (emphasis omitted) ("NCOR").

People's Mojahedin Organization involved a challenge by two organizations to their designation as foreign terrorist organizations by the Secretary of State pursuant to the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189. The two organizations had "no presence in the United States" and their foreign status was uncontested. People's Mojahedin Org., 182 F.3d at 22.  Thus, the Court of Appeals held that the organizations could not raise constitutional claims. Id.

In 32 County Sovereignty Committee, two other organizations were similarly designated as foreign terrorist organizations.  The organizations submitted affidavits from their members in the United States indicating that they "personally rented post office boxes and utilized a bank account to transmit funds and information" to

the organizations. _Id._ at 799. However, there was no showing that the organizations "possessed any controlling interest in property located within the United States, nor...any other form of presence here." _Id._ The Court of Appeals found these facts insufficient to show enough of a nexus with this country to entitle the organizations to constitutional protections. _Id._

In _National Council of Resistance_, by contrast, the Court of Appeals found that the National Council of Resistance of Iran ("NCRI") did have sufficient presence in the United States to raise constitutional claims. _Id._ at 201. The organization had "an overt presence within the National Press Building in Washington, D.C." and maintained a small bank account in the United States. _Id._ Based on these facts, as well as a review of the administrative record as a whole, including its classified portions, the Court of Appeals concluded that NCRI had developed substantial connections with the United States. _Id._ at 202. A second organization, the People's Mojahedin of Iran ("PMOI"), "made little serious assertion of an independent presence in the United States." _Id._ However, during the designation process, the Secretary of State had determined that NCRI was an alter ego or alias of PMOI. _Id._ at 197. Based on that status, the court concluded that PMOI also had a sufficient nexus with the United States. _Id._ at 203.

In this case, the Government concedes that AHIF has established a substantial presence in this country, but argues that

Plaintiff has not.  The Government's argument does not withstand close scrutiny.

Plaintiff was a corporate officer of AHIF, an Oregon corporation.  In this role, he traveled to the United States, including trips to both Missouri and Oregon.  He also assisted AHIF in its acquisition of property in Missouri, pursuant to a power of attorney he executed.

AHIF was controlled by the global AHF organization, of which Plaintiff served as chairman, director general, and president.  AHIF received funding from AHF, which had decision making authority over the former's financial transactions.  And just as AHF exercised control over AHIF, Plaintiff controlled AHF, according to the Treasury Department.  The press release that announced Plaintiff's designation as an SDGT, declared that he "controlled AHF and was responsible for all AHF activities."  Office of Public Affairs Press Release, June 2, 2004.

Through his control of AHIF, by virtue its relationship with AHF which he also controlled, his status as an AHIF corporate officer, his trips to Oregon and Missouri on behalf of AHIF, and his assistance to AHIF in acquiring property in Missouri, Plaintiff has established a sufficient presence in the United States to assert at least his due process claims under the Fifth Amendment.  See Nat'l Council of Resistance, 251 F.3d at 200-203.

The Government points to arguments made by Plaintiff while

contesting personal jurisdiction in a civil case filed in 2003 in
the United States District Court for the Southern District of New
York.  See Burnett v. Al Baraka Inv. & Dev. Corp., No. 03-CV-9849
(S.D.N.Y.).  In a declaration in support of his motion to dismiss,
Plaintiff stated that he had visited the United States on a single
occasion and owned no property in this country.  Declaration of
Aqeel Al-Aqeel, Apr. 7, 2004, ¶¶ 5-6.

However, the issue presented in Burnett was quite different
from the one now before this Court.  Burnett turned on the question
of whether Al-Aqeel, as a defendant, had purposefully availed
himself of the protections of the law of the forum--the State of
New York--for the court to exercise personal jurisdiction over him.
Here, the question is whether Al-Aqeel, as a plaintiff, has
sufficient connections with the United States as a whole to have
standing to raise claims under our Constitution.  Moreover, nothing
in Plaintiff's declaration in Burnett directly contradicts the
factual representations he has made in this case.

For these reasons, Plaintiff has standing to raise claims
under the due process clause of the Fifth Amendment.

The same cannot be said concerning Plaintiff's Fourth
Amendment claim.  It is settled law that the Fourth Amendment does
not "restrain the actions of the Federal Government against aliens
outside of the United States territory."  United States v. Verdugo-
Urquidez, 494 U.S. 259, 266 (1990).  The Amended Complaint alleges

that the Government blocked and interfered with Plaintiff's <u>overseas</u> assets. Am. Compl. ¶ 42. Plaintiff also alleges that he is a citizen of Saudi Arabia. <u>Id.</u> ¶ 10. Accordingly, Plaintiff's Fourth Amendment claim (Count III of the Amended Complaint) is **dismissed** for failure to state a claim.

> **B.    Al-Aqeel Has Failed to Establish that His Due Process Rights Were Violated Because He Received Adequate Notice and Was Afforded a Meaningful Opportunity to Be Heard**

Plaintiff does not argue that he was entitled to pre-designation notice from the Government. Mot. for Summ. J. at 10. Instead, he claims that the Government's method of notice--posting a press release on the Treasury Department website--was inadequate and that, "[b]y not providing notice, the plaintiff had no way of defending himself." <u>Id.</u> at 11.

"The due process clause generally requires the Government to afford notice and a meaningful opportunity to be heard before depriving a person of certain property interests." <u>Holy Land Found. v. Ashcroft</u>, 219 F. Supp. 2d 57, 76 (D.D.C. 2002), <u>aff'd</u>, 333 F.3d 156 (D.C. Cir. 2003); <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) ("This Court consistently has held that some form of hearing is required before an individual is <u>finally</u> deprived of a property interest...[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (emphasis added and internal quotation marks omitted).

Here, there is no question that Plaintiff was adequately put on notice of his designation as an SDGT.   OFAC posted the press release announcing the designation on the Treasury Department website on June 2, 2004, and according to the Amended Complaint, "Plaintiff learned of his designation through a Department of Treasury press release."   Am. Compl. ¶ 20.   Thus, by Plaintiff's own admission in his Amended Complaint, the Government's method of service was adequate to give him notice of his designation.

Furthermore, Plaintiff was able to challenge his designation through OFAC's administrative reconsideration process, but has chosen not to do so.   Pursuant to 31 C.F.R. § 501.807, a "person may seek administrative reconsideration of his, her or its designation...and thus seek to have the designation rescinded." Under the regulation, the blocked person is permitted to "submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation."   31 C.F.R. § 501.807(a).   Moreover, Plaintiff was also entitled to request a hearing, pursuant to 31 C.F.R. § 501.807(c), and to receive a written determination of his request for reconsideration.   31 C.F.R. § 501.807(d).   Plaintiff simply did not avail himself of this process.

Accordingly, Plaintiff was provided with both notice and a meaningful opportunity to be heard, as required by due process. See Holy Land Found., 219 F. Supp. 2d at 66 (due process satisfied

14

by post-designation notice and an opportunity to submit evidence to OFAC).[7]

Plaintiff argues that the Court of Appeals' decision in National Council of Resistance ("NCOR") requires a different outcome. NCOR involved a challenge to the Secretary of State's designation of an entity as a "foreign terrorist organization" under the Anti-Terrorism and Effective Death Penalty Act of 1996, 8 U.S.C. § 1189, a separate statutory scheme not in issue in this case. NCOR, 251 F.3d at 196. The Court of Appeals held that due process required the Secretary to provide notice prior to designation under that statute, unless the Secretary could make an adequate showing that pre-designation notice "would impinge upon the security and other foreign policy goals of the United States." Id. at 208. As discussed above, however, Plaintiff has conceded that he is not entitled to pre-designation notice. NCOR therefore does not assist his argument.

Plaintiff also argues that OFAC's notice was inadequate because he was not informed of his right to administratively challenge his designation before the agency. Whatever merit this argument may once have had, events have now passed it by. The

---

[7] Plaintiff's APA claim fails for the same reasons. He argues that OFAC's certification process did not meet the standards set out for "adjudications" under the APA. 5 U.S.C. § 554. However, these procedures only apply "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a). The IEEPA contains no such requirement. See 50 U.S.C. § 1702(a)(1)(B).

Government has now provided a copy of the non-privileged and unclassified portions of the Administrative Record to Plaintiff as well as information concerning how to challenge his designation through OFAC's administrative reconsideration process. See Defs.' Mot. to Dismiss, Ex. B (Correspondence from Barbara Hammerle, Acting Director, OFAC, to Ashraf Nubani, Esq., Sept. 12, 2005).

### C.   Al-Aqeel Has Provided No Legal Basis for Obtaining Privileged and Law Enforcement Sensitive Portions of the Administrative Record

Plaintiff also fails to provide a rational legal basis for his narrower argument that he is entitled to obtain the privileged and LES portions of the Administrative Record.  He argues that because IEEPA provides for ex parte and in camera judicial review of classified portions of the record in a challenge to a designation under the Act, see 50 U.S.C. § 1702(c), he is therefore entitled to the non-classified portions of the record, including privileged and LES materials.

Plaintiff's argument makes little sense.  It does not follow logically that because the IEEPA provides for in camera review of classified portions of the Administrative Record that it therefore also provides the Plaintiff with a right to non-classified, but privileged, portions.

Privileged materials are, by definition, materials that a party may not be compelled to produce in order to protect the interests advanced by the specific evidentiary privileges in issue.

16

See Black's Law Dictionary 1235 (8th ed. 2004) (privilege: "[a]n evidentiary rule that gives a witness the option to not disclose the fact asked for, even though it might be relevant; the right to prevent disclosure of certain information in court, esp. [sic] when the information was originally communicated in a professional or confidential relationship"). LES materials have been specifically recognized as subject to "a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." Tuite v. Henry, 181 F.R.D. 175, 176 (D.D.C. 1998), aff'd 203 F.3d 53 (Table) (D.C. Cir. 1999).  The applicability of this qualified privilege is determined by a ten-factor balancing test. Id. at 177 (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

Plaintiff does not argue that the portions of the Administrative Record he seeks are not subject to the LES privilege or that the ten Frankenhauser factors weigh in favor of disclosure. Instead, he contends that the LES privilege is not a privilege at all, citing Muniz v. Meese, 115 F.R.D. 63, 65 (D.D.C. 1987) in support.  To the extent Muniz stands for this proposition, it is in conflict with more recent controlling Circuit authority. See Tuite v. Henry, 98 F.3d 1411, 1417-18 (D.C. Cir. 1996); In re Sealed

Case, 856 F.2d 268, 271-72 (D.C. Cir. 1988).[8]

Plaintiff has provided no legal basis for obtaining the privileged portions of the Administrative Record. Accordingly, his remaining Fifth Amendment and APA claims (Counts I and II) are **dismissed** for failure to state a claim.

## IV.  CONCLUSION

For the reasons set forth above, the Government's Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [**Dkt. No. 29**] is **granted**. Plaintiff's Motion for Summary Judgment [**Dkt. No. 36**] is **denied as moot**. An Order shall accompany this Memorandum Opinion.


August 4, 2008                         /s/_____
                                       Gladys Kessler
                                       United States District Judge


**Copies to: Attorneys of record via ECF**

---

[8] Plaintiff also cites cases arising under the Freedom of Information Act ("FOIA") and argues that the Government has failed to establish that the privileged portions of the Administrative Record are exempted from disclosure by FOIA Exemption 7, which protects law enforcement related information. This argument requires little discussion: Plaintiff has not asserted FOIA claims in his Amended Complaint.